**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**MADELINE A. GALBRAITH,**

**Plaintiff,**

**v.** **Case No. 25-C-694**

**FRANK J. BISIGNANO,**
**Commissioner of Social Security,**

**Defendant.**

---

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

---

This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Madeline A. Galbraith's application for supplemental security income (SSI) under Title XVI of the Social Security Act. Plaintiff asserts that the administrative law judge (ALJ) erred in his assessment of her residual functional capacity, in his evaluation of the opinion evidence, and in his analysis of her statements regarding her symptoms. For the following reasons, the decision of the Commissioner will be reversed and remanded pursuant to 42 U.S.C. § 405(g) (sentence four).

## BACKGROUND

An individual is disabled for purposes of the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d) (1)(A).

Plaintiff filed an application for SSI as an adult on July 6, 2018, alleging disability beginning June 8, 1998, the day she was born. R. 75. She listed autism spectrum; nerve and

muscle pain; involuntary eye, arm, head, and vocal spasms; depression; heart murmur as a child; "other behavior problems;" exposure to lead; lead toxicity; seasonal allergies; and tics of organic origin as the conditions limiting her ability to work. R. 237. After her application was denied initially and on reconsideration, an ALJ held an administrative hearing on June 23, 2020. R. 35–74. Plaintiff, who was represented by counsel, her father, and a vocational expert (VE) testified.

At the time of the hearing, Plaintiff was 22 years old and lived in a house with her parents, brother, and sister in Luxemburg, Wisconsin. R. 44, 60. Plaintiff graduated from high school but attended special education classes throughout her school years. R. 58, 238. She briefly attended Northeast Wisconsin Technical College. R. 45. She testified that she attended at least one class for one year and did not receive a certificate or degree. *Id.* Plaintiff stated that she stopped attending classes because she did not have transportation or the money to pay for it. She indicated that she struggled "a little bit" with her class but passed it. *Id.* Plaintiff testified that she obtained a job at Goodwill in 2016 and 2017 through her school and that she sorted clothes, put tags on items, removed tags, and stocked shelves. R. 46. She indicated that she got confused about the job, would get distracted, and needed reminders. R. 47. Plaintiff stopped working at Goodwill to catch up on her grades. R. 56. She had not attempted work or a job since her time at Goodwill. R. 47.

Plaintiff testified that her muscle and neck tics prevented her from working. Plaintiff was diagnosed with Tourette syndrome that causes constant motor and vocal tics. *Id.* She reported that she took supplements, magnesium, calcium, zinc, a multivitamin, and B-vitamin complex and did stretches and exercises to help with her Tourette symptoms. R. 48. Her doctors prescribed the vitamins but no medication for the condition. *Id.* Plaintiff stated that the vitamins and exercise only helped reduce her symptoms "a little." *Id.* She indicated that, as a result of the tics, she has

a hard time performing chores, including laundry, dishes, and cleaning her room. R. 48–49. Plaintiff explained that the tics cause her muscles to get tired and sore. R. 49.

Plaintiff testified that her autistic spectrum disorder makes it difficult to communicate and understand what people are telling her. *Id.* She had last seen a therapist about six months before the hearing. R. 50. Plaintiff stopped going to therapy due to a lack of transportation. She explained that her father works rotating shifts and the therapist is twenty miles from where she lives. *Id.*

As for her day-to-day activities, Plaintiff stated that she needs reminders to complete her self-care. R. 51. Plaintiff reported that she usually watches television or plays video games and does minor exercise for her muscles and nerves. R. 57. She testified that she is unable to cook meals because she does not have the skills to do so. R. 51. Plaintiff indicated that she sometimes goes to the grocery store with her parents but could not do the shopping by herself because she could not handle money or decide what to get. R. 51–52. She stated that she gets confused, gets distracted, and has difficulty understanding and following directions. R. 53. Plaintiff does not have a driver's license. She took a driver's education course but never took the driver's test. R. 44, 907.

Plaintiff's father also testified at the hearing. He stated that Plaintiff is pretty friendly and nice but there are a lot of misunderstandings due to communication. R. 61. Plaintiff's father described her tics as a constant jerking and that she has posture issues and is hunched over quite a bit. R. 62. He indicated that Plaintiff's misunderstandings stem from her tendency to focus on one thing, she cannot complete multistep tasks because she focuses on one step and does not remember the rest, and she needs constant reminders. R. 63–64. Plaintiff's father stated that she was working with DVR to find a job but that Plaintiff ultimately wanted to continue her schooling.

R. 64. He testified that Plaintiff did not have her driver's license because she has a fear of operating machinery and that he was the only person in the family with a driver's license. R. 65–66.

The ALJ issued an unfavorable decision on September 1, 2020, and the Appeals Council denied review of the decision on March 18, 2021, making the ALJ's decision the final decision of the Commissioner. R. 1–27. Plaintiff subsequently filed a complaint in the United States District Court for the Eastern District of Wisconsin, seeking judicial review of the ALJ's decision. The matter was reversed and remanded for further proceedings on stipulation of the parties. R. 980–84; *see also Galbraith v. Kijakazi*, No. 21-cv-613-NJ (E.D. Wis.).

ALJ Arman Rouf held a second administrative hearing on November 6, 2023. Plaintiff, who was represented by counsel, and a VE testified. R. 892–919. At the time of the hearing, Plaintiff was 25 years old and continued to live with her parents, brother, and sister. R. 897. Plaintiff testified that she did some chores around the home that consisted of dishes, laundry and cleaning up. She testified that cleaning up meant "just picking up stuff and putting it away. She explained that she loads and empties the dishwasher, but her mother operates it. She likewise moves clothes from the clothes washer, which her mother operates, to the dryer and then sorts them out when the clothes are dry. R. 904–05.

After she graduated from high school, Plaintiff pursued a degree in computer science at a technical college. Although she attended classes for one or two years and reported doing well in her classes, she did not graduate. R. 897, 903. She testified that she stopped attending classes because she had sensitive skin and was breaking out in rashes. R. 903. Plaintiff worked at a Goodwill store in 2016 and 2017. R. 898. She obtained the job through her special education life skills class, and her job duties included removing or adding tags to items, sorting items, and restocking shelves. Plaintiff indicated that the job was "fun" but that her muscle soreness

prevented her from doing a good job. *Id.* In 2017, Plaintiff shadowed a few jobs through school and a DVR program. R. 898–99. Plaintiff stopped participating in the program because she did not feel ready to work. R. 899.

When asked about the conditions that would keep her from working or affect her ability to work, Plaintiff testified that her motor tics in her neck and both wrists and her vocal tics cause muscle fatigue and that she has noise sensitivity that impacts her ability to do normal household activities. R. 899–900. She indicated that the motor tics occur constantly but that high energy, stress, or general excitement cause the tics to worsen. R. 900, 909. Plaintiff reported that her vocal tics are also constant and that they get worse with excitement. R. 901. She had seen a neurologist to address the tics, but the medication the neurologist prescribed did not work. At the time of the hearing, Plaintiff was taking medication for the tics and the medication calmed her muscles and allowed her to sleep. *Id.* Plaintiff was not taking any other prescribed medication. R. 908.

As for a typical day, Plaintiff reported that she plays video games, does some chores, draws, listens to music, and watches television. R. 903. She stated that she spends most of the day playing video games, though she does take breaks. R. 904. Plaintiff's chores include loading and unloading the dishwasher, putting clothes in the dryer and sorting them when they are dry, and general tidying. R. 904–05. Plaintiff indicated that she finds cooking difficult and heats up leftovers in the microwave. R. 905–06. She testified that she does not like going to the grocery store because of her muscle fatigue and noise sensitivity, and she does not want to socialize. R. 906. Plaintiff stated that she would not be able to find items from a list in a grocery store because she is not good at following directions. R. 906–07. If she needs to go somewhere, her father drives

her. R. 907. Although Plaintiff completed driver's education, she did not take the driving test. *Id.* She stated that she talks to friends online and barely has any in person with friends. R. 908.

In a 20-page decision dated February 8, 2024, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since July 6, 2018, the date the application was filed. R. 923–42. Following the Agency's sequential evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity since July 6, 2018, the application date. R. 926. Next, the ALJ determined that Plaintiff had the following severe impairments: tic disorder/Tourette syndrome, autism spectrum disorder, intellectual disorder, attention-deficit/hyperactivity disorder (ADHD), generalized anxiety disorder, and adjustment disorder. *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After consideration of the record, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations:

> the claimant can occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds. She can frequently handle and finger with the bilateral upper extremities. The claimant must avoid unprotected heights and dangerous moving machinery. She can tolerate moderate noise in the work environment. The claimant can understand, remember, and carry out simple instructions. She can maintain attention, concentration, persistence and pace for two-hour segments. She can use judgment to make simple work-related decisions. The claimant can deal with occasional changes in a routine work setting. She can frequently interact with supervisors, occasionally interact with coworkers, and never interact with the public.

R. 929. The ALJ noted that Plaintiff has no past relevant work. R. 940. But considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, including marker, routing clerk, and collator operator.

R. 940–41. Accordingly, the ALJ concluded, based on the application for supplemental security income filed on July 6, 2018, that Plaintiff is not disabled as defined by the Social Security Act. R. 942. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner.

## LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023) (internal quotation marks and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to his conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citation omitted); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998).

The ALJ is also expected to follow the Social Security Administration's (SSA) rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the

ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**ANALYSIS**

Plaintiff challenges the ALJ's decision denying her application for SSI on three separate grounds. She contends:

> (1) The ALJ's mental residual functional capacity (RFC) assessment was legally insufficient because the ALJ failed to explain what evidence led to his conclusions, as required by 20 C.F.R. § 416.945 and SSR 96-8p, and the Seventh Circuit, and failed to include limits from the state agency consulting psychologist, whose opinions the ALJ purported to have found persuasive, without explanation for that omission.
>
> (2) The ALJ's evaluation of the opinion evidence was legally insufficient because he failed to comply with the requirements of 20 C.F.R. § 416.920c and therefore the ALJ's decision to discount those opinions was not supported by substantial evidence.
>
> (3) The ALJ's analysis of Plaintiff's subjective statements was legally insufficient because he failed to explain how he weighed the relevant regulatory factors, as required by 20 C.F.R. § 416.929 and SSR 16-3p.

Pl.'s Br., Dkt. No. 13 at 2. The Court will resolve only the first.

Plaintiff argues that the ALJ's RFC finding does not adequately account for her limitations in concentration, persistence, and pace (CPP). A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1). More specifically, it is "the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." SSR 96-8p, 1996 WL 374184, at *2. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* At the hearing level, the RFC assessment "is a matter for the ALJ alone" to decide. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014); 20 C.F.R. § 416.946(c). "As a general rule, both the

hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citation omitted). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

The Seventh Circuit has recognized that "[t]he law does not require ALJs to use certain words, or to refrain from using others, to describe the pace at which a claimant is able to work." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). The same is true of the other functional areas. "As a matter of form, the ALJ need not put the questions to the VE in specific terms—there is no magic words requirement. As a matter of substance, however, the ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019)).

In this case, the ALJ found, with respect to Plaintiff's mental RFC, that she has moderate limitations in all functional domains and that these limitations reasonably reduce Plaintiff's mental residual functional capacity to the ability to understand, remember, and carry out no more than simple instructions. R. 933. With respect to the mental aspect of her RFC, the ALJ found:

> The claimant can understand, remember, and carry out simple instructions. She can maintain attention, concentration, persistence and pace for two-hour segments. She can use judgment to make simple work-related decisions. The claimant can deal with occasional changes in a routine work setting. She can frequently interact with supervisors, occasionally interact with coworkers, and never interact with the public.

R. 929.

Plaintiff argues, however, that the ALJ failed to incorporate all of her limitations in the broad functional areas as found by the state agency psychological consultants into the RFC and that he failed to adequately explain his reasons for failing to do so. She contends that, despite finding the state agency psychological consultants' opinions "somewhat persuasive," the ALJ omitted limitations they offered, without any explanation for the omission. In particular, Plaintiff asserts that the ALJ failed to include the limitation to 1-2-step instructions and for her moderate limitations in concentration, persistence, or pace.

As for the limitation to 1-2-step instructions, it is worth noting that neither Dr. Bard nor Dr. Cools said Plaintiff lacked the ability to perform work requiring more than one or two steps. Each included in the narrative section of the mental RFC form they completed under the heading for social interaction limitations the statement that Plaintiff "will function best in a work setting where the tasks are highly structured, routine, and well-defined with the demands to follow only 1–2 step directions." R. 88, 107. But in determining an individual's RFC, the ALJ is not deciding the conditions under which a claimant will function best; the ALJ is deciding what conditions are necessary for a claimant to perform "sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." SSR 96-8p, 1996 WL 374184, at *2. Nevertheless, the ALJ viewed the recommendation of jobs with 1–2 step directions as a limitation included by both state agency psychological consultants. R. 935, 937. As such, the ALJ found the limitation "off base and unsupported." *Id.* The ALJ noted that the requirement of 1–2 step instructions "is not related to moderate limitations in interacting with others" but even if it was considered in a larger context, "it is unsupported by the clinical record." *Id.*

It is unclear what the ALJ meant by stating the limitation is "off base." The fact that it may have been included in the wrong section of the MRFC form is not a good reason for disregarding

it. But the ALJ's statement that the 1–2 step limitation is unsupported by the clinical record is a sound reason for rejecting the proposed 1–2 step limitation in formulating an RFC for Plaintiff. Plaintiff contends that the ALJ failed to provide any explanation for his finding that the limitation was unsupported by the evidence, but what explanation is possible to show the absence of evidence? The ALJ is not required to prove a negative. If Plaintiff believes that the ALJ erred in this finding, then she should point to the clinical evidence that supports the limitation. She has not done so. On the other hand, Dr. Krawiec, who performed a consultative examination in November 2018, found as follows:

> On a short-term memory task, she recalled three of three items on an immediate trial at recall and after 5 minutes had elapsed. Her attention and concentration ability was adequate for following and participating in the ongoing conversation. She also did a good job on a serial 2's task. "[o]n a short-term memory task, she recalled three of three items on an immediate trial at recall and after 5 minutes had elapsed.

R. 388. These results certainly suggest that she was capable of more than 1 or 2-step instructions. So does the recommendation of Dr. Smet, who conducted a neuropsychological evaluation of Plaintiff in January 2019, that she undertake "mental activities such as sudoku, crossword puzzles, playing cards and reading" to maintain her brain health. R. 399. Even her primary activity during the day of playing video games would seem to call for an ability to handle more than two-step instructions.

The failure to include any condition to account for Plaintiff's moderate limitation in pace, however, is more problematic. One can sympathize with the ALJ's failure to include such a condition in the RFC, since neither of the state agency consultants included one in the narrative section of the Mental Residual Functional Capacity (MRFC) forms they completed. Indeed, the MRFC form itself doesn't even include pace, along with concentration and persistence, as a specific functional capacity the consultant is required to rate. The form asks the consultant, "Does

the individual have sustained concentration and persistence limitations?" R. 87, 106. It then instructs the consultant to "Rate the individual's sustained concentration and persistence limitations." *Id.* Only in the last question under that heading is pace even mentioned. The form asks the consultant to rate the individual's "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* In this case, both consultants rated Plaintiff "moderately limited" in this ability. *Id.* But then neither listed any condition in the narrative section of the form to account for this limitation.

This is an important failure on the part of the consultants. Pace refers to the speed at which the individual can perform the tasks required for the job, how well she can keep up. The fact that an individual has sufficient concentration and persistence to perform simple tasks does not say anything about the speed at which they are able to perform those tasks. In *Lothridge*, for example, the court noted that "the ALJ acknowledged that Lothridge only 'sometimes finished what she started,' 'got frustrated easily,' 'did not handle stress well,' and had 'some challenges with concentration'—even that she was distressed during the hearing and needed to have questions repeated. 984 F.3d at 1233. "Yet," the court continued, "the ALJ's step-four finding on her residual functional capacity a few pages later contained no corresponding restrictions. It limited Lothridge to 'simple instructions and tasks with restricted interactions with others' without addressing her ability to stay on task for a full workday or to perform at the required speed." *Id.* This, the court concluded, was error. *Id.* at 1232.

Having rated Plaintiff's ability to perform at a consistent pace without an unreasonable number and length of rest periods "moderately limited," the consultants should have included a condition corresponding to that limitation in the narrative section of the MRFC form. The MRFC

form itself instructs state agency consultants that "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." R. 87, 105. The agency's Program Operations Manual System (POMS), which contains the Social Security Administration's internal rules of procedure, likewise informs consultants: "**It is the narrative** written by the PC **that adjudicators use as the assessment of MRFC**." POMS DI 25020.010B.1, available at https://secure.ssa.gov/poms.nsf/lnx/0425020010 (bold in original). Because no such condition was included in the narrative section of the MRFC forms, it is understandable that the ALJ failed to include such a condition in the RFC he formulated for Plaintiff.

The Seventh Circuit has held, however, that the ALJ may not ignore the consultants' ratings on the list of questions preceding the narrative section of the form unless they are accounted for in the narrative. *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) (citing *Yurt*, 758 F.3d at 858); *see also Capman v. Colvin*, 617 Fed. Appx. 575, 579 (7th Cir. 2015) (noting "the ALJ may reasonably rely on the examiner's narrative in Section III, at least where it is not inconsistent with the findings in the Section I worksheet"). Because it failed to account for Plaintiff's moderate limitations in pace, the narrative section of the MRFC completed by the state agency consultants was inconsistent with the findings as to each individual category.

The Commissioner argues that "substantial evidence supports the ALJ's residual functional capacity (RFC) assessment that Plaintiff was limited to a range of light, simple work with various mental restrictions." Def.'s Br., Dkt. No. 20 at 2. But the RFC formulated by the ALJ did not limit Plaintiff to "a range of simple work"; it limited her to work with "simple instructions." R. 929. It is not clear that simple instructions correspond with simple work. All three jobs the vocational expert found Plaintiff could perform, given the RFC provided by the ALJ—marker,

routing clerk, and collator operator—are classified as SVP 2 in the Dictionary of Occupational Titles. SVP refers to Specific Vocational Preparation, which is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles, Appendix C, available at https://occupationalinfo.org/appendxc_1.html#II. SVP 2 means that the job requires anything beyond a short demonstration up to one month of training and experience to reach average performance. *Id.* This hardly seems like "simple instructions."

The Commissioner also suggests that "a functional restriction to simple, routine work" accounts for "moderate limitation in maintaining attention and concentration. Def.'s Br. at 14. He notes that "under the revised regulations applicable in this case, 'moderate' means that functioning in a particular area independently, appropriately, effectively, and on a sustained basis is still 'fair.'" *Id.* at 13 (citing 20 C.F.R., pt. 404, subpt. P, app. 1 § 12.00(F)(2)). Citing *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021), the Commissioner points out that the Seventh Circuit has acknowledged that "fair" does not mean "bad" or "inadequate."

But again, the ALJ did not limit Plaintiff to "simple, routine work"; he said she could "understand, remember, and carry out simple instructions." R. 929. Leaving that aside, no matter how one defines it, a moderate limitation suggests at least some limitation which, under Seventh Circuit case law, must be addressed. *See Martin*, 950 F.3d at 374 ("The ALJ incorporated pace-related limitations by stating that Martin needed flexibility and work requirements that were goal-oriented."). Even in *Pavlicek*, in addition to limiting the claimant to "carrying out simple instructions and routine, repetitive tasks," the ALJ included in the RFC that the claimant "only

make simple work-related decisions in an environment without fast-paced production requirements." 994 F.3d at 781.

The Commissioner further notes that in this case the ALJ also included in the RFC the statement that Plaintiff "can maintain attention, concentration, persistence and pace for two-hour segments," and thereby, the Commissioner suggests, accounted for the limitation in each. R. 929. As Plaintiff points out, however, stating that a claimant can maintain attention, concentration, persistence and pace for two-hour segments is really no limitation at all. This is because, since normal breaks occur every two hours during a regular 8-workday, a break every two hours, without further description, is not a limitation of the claimant's RFC. Pl.'s Br., Dkt. No. 13 at 12 (citing *Jason M. v. Kijakazi*, No. 1:20-cv-03121-MG-SEB, 2022 WL 2071096, at *8 (S.D. Ind. June 9, 2022)). The Commissioner notes, however, that in *Pufahl v. Bisignano*, the court upheld a similar limitation, stating that "the limitations that Ms. Pufahl '[c]an perform simple and routine tasks' and '[c]an maintain attention and concentration for two-hour segments,' naturally function as limitations on one's ability to complete a normal workday without interruption and to perform at a consistent pace." 142 F.4th 446, 460 n. 27 (7th Cir. 2025).

Yet, again, the court notes that the ALJ did not limit Plaintiff to simple and routine tasks. Had he done so, consistent with the opinion of at least one of the state agency consultants (R. 107), this would seemingly account for the moderate limitations in concentration and perhaps persistence. *See Martin*, 950 F.3d at 374 ("The second ALJ found that "[Martin] could maintain the concentration required to perform simple tasks, remember simple work-like procedures, and make simple work-related decisions."). But it would not account for pace. Saying that a claimant "can maintain attention, concentration, persistence and pace for two-hour segments" says nothing about the speed required for the job within those two hours. For example, The Dictionary of

Occupational Titles states the job of a Routing Clerk, one of the three kinds of jobs the vocational expert testified a person with Plaintiff's RFC could perform, includes the following tasks:

> Sorts bundles, boxes, or lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts. Places or stacks articles in bins designated according to route, driver, or type. May be designated according to work station as Conveyor Belt Package Sorter (retail trade).

https://occupationalinfo.org/24/249367070.html. Do Plaintiff's moderate difficulties in pace preclude her from performing these tasks at the speed required to keep up throughout the day? The RFC formulated by the ALJ includes no condition that would permit an answer to that question.

Finally, the court noted in *Moy v. Bisignano*, that "[t]he ALJ in *Pavlicek* justified the conclusion that the claimant could work at a consistent pace by expressly incorporating the doctor's recommendation that the claimant engage in only simple, repetitive tasks (which, according to the doctor, accounted for the claimant's pace-related limitations)." 142 F.4th 546, 555 (7th Cir. 2025). No doctor in this case made a similar recommendation that accounted for pace-related limitations.

The court concedes that significant confusion still exists in this circuit over how ALJs are to account for the moderate difficulties in CPP, which are almost always present in cases involving mental impairments. Assuming an RFC limiting the claimant to jobs requiring "simple instructions" is equivalent to one limiting the individual to simple, routine tasks, and notwithstanding the factual distinction *Moy* drew, it does appear that the above quoted language from *Pufahl* would seem to support the Commissioner's argument that the ALJ here properly accounted for Plaintiff's moderate limitation in pace. But *Pufahl* did not overrule the long line of cases that have consistently held that "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant

problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (collecting cases); or more recently, *see Lothridge*, 984 F.3d at 1233 ("We have repeatedly cautioned that 'someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be.'"); and *Moy*, 142 F.4th at 553. Indeed, even when ALJ's have attempted to account for moderate difficulties in pace by limiting the claimant to work "free of fast paced production requirements, involving only simple work related decisions," *Varga*, 794 F.3d at 815, or "simple work instructions and [ ] routine, low-stress work," *Moreno*, 882 F.3d at 730, or "'unskilled work' . . . with no 'fast-paced production line or tandem tasks,'" *DeCamp*, 916 F.3d at 676, the Seventh Circuit has found those RFCs insufficient to account for the claimant's moderate limitations in CPP. *Martin*, which sought to bring clarity to the problem of accounting for moderate difficulties in CPP in an individual's RFC, would seem to supersede some of the earlier cases, putting their holdings on this issue in doubt, but the law remains unclear. 950 F.3d 369.

In any event, based on the current state of the law in this circuit and for the reasons set forth above, the court concludes that the ALJ erred in failing to include a limitation in the RFC to account for Plaintiff's limitation in pace. For this reason alone, the Commissioner's decision must be reversed and the case remanded to the Commissioner. But to avoid further appeals and delays in the final resolution of the case, the Commissioner should also consider Plaintiff's arguments that the ALJ erred in his assessment of the opinion evidence in the case and in his evaluation of Plaintiff's symptoms.

As for Plaintiff's alleged symptoms, it is surely true that what an individual does and what an individual is capable of doing are two different things. In this case, the ALJ is tasked with the difficult job of determining whether a person with Plaintiff's significant impairments is capable of

holding a full-time job instead of sitting home all day playing video games, completing a few limited chores, and drawing, which is what she appears to be doing. The fact that she briefly attended a technical college would suggest she may be capable of more, but if, as it appears, she took only one basic windows class and passed it with difficulty, it may be less significant than otherwise appears. R. 45–46. Likewise, if her failure to obtain a drivers license is because she cannot safely operate a motor vehicle on the highway, as opposed to a lack of initiative, it would be a significant fact to consider.

As for assessing the opinion evidence, it appears from the ALJ's decision that in rejecting the opinions of Dr. Smet and Plaintiff's therapist, he heavily relied upon the fact that Plaintiff "has no more than mild intellectual delay" and they were not supported by the treatment and clinical records. R. 938–39. But in addition to her borderline or low average cognitive functioning, Plaintiff has been diagnosed with autism. Does autism cause noncognitive limitations in an individual's capacity to engage in sustained work activity? Are there treatments for autism such that one would expect to see those limitations addressed in treatment or clinical records? Was Plaintiff or her parents made aware of such treatments?

In *Buehner v. Kijakazi*, a case involving a claimant with similar impairments, the court addressed the need to construct a logical bridge from the evidence to the conclusion that a claimant with autism was not disabled. The court's discussion of autism in that case highlights some of the concerns Plaintiff raises here:

> The ALJ also failed to build a logical bridge from the evidence to her conclusion. The ALJ repeatedly stated that Buehner's subjective symptoms related to task completion and social interaction are contradicted by his ability to attend college classes, his high grades, his ability to successfully perform serial sevens, and the fact that he was described as "intelligent." With all due respect to the ALJ, these examples miss the point. Autism is not defined by intellectual disability. In fact, the DSM-V does not include intellectual impairments as a symptom of autism. Instead, signs of autism include deficits in social communication and interaction, as

> well as closely focused interests. Buehner's ability to obtain good grades in classes that he is passionate about does not speak to his ability to interact socially with others or his ability to complete tasks on his own. Buehner's father testified to it being "a lot of work" to keep him organized with his classes and assignments and ensuring Buehner finished assignments. To that point, his father testified to having to remind Buehner which classes are on which days, what assignments are due, and when assignments are due. He also testified that Buehner does not advocate himself and does not have a phone, so his father frequently communicates with his professors and assists Buehner by making phone calls to facilitate what he needs for his education. Yet the ALJ ignored all this, providing no discussion of Buehner's need for extra support to obtain his grades and complete tasks, nor did the ALJ provide any explanation as to how his intellect or grades translated to improved social communication.

No. 1:22-cv-045-PPS, 2022 WL 17076652, at *5 (N.D. Ind. Nov. 18, 2022) (footnotes and record citations omitted).

Of course, every case is different, and autism spectrum encompasses a wide range of behaviors and capabilities. Presumably, many if not most people with "symptoms of a very high functioning autistic spectrum disorder i.e. Asperger's disorder" (R. 399), are able to work. *See* Grandin, Temple, DIFFERENT … NOT LESS: INSPIRING STORIES OF ACHIEVEMENT AND SUCCESSFUL EMPLOYMENT FROM ADULTS WITH AUTISM, ASPERGER'S, AND ADHD (Future Horizons 2020). In citing the court's analysis in *Buechner*, this court does not intend to suggest that Plaintiff should be found to be disabled on remand, only that the unique characteristics of autism should be considered.

It would not benefit Plaintiff if, as of age 18, she was determined to be disabled and incapable of holding full-time employment if she is in fact capable of doing so or would be capable with some training. For most people, work gives meaning and structure to life and creates opportunities to interact with others that help us to grow to our full potential. It is certainly better for human flourishing than lying on the couch playing video games. It is likely for this reason that

Dr. Smet wrote in her report that "Madeline may also benefit from a referral to the division of vocational rehab to help her find suitable employment or schooling." R. 400.

In any event, the decision of the Commissioner is reversed and remanded for the reason set forth above. The court's additional comments are intended to assist both Plaintiff and the Commissioner on remand to the extent they may find them helpful.

## CONCLUSION

The ALJ erred in failing to account for Plaintiff's moderate limitation in pace in formulating Plaintiff's RFC. For this reason, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to 42 U.S.C. § 405(g) (sentence four). The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 9th day of September, 2026.

William C. Griesbach
United States District Judge